No. 26-1506

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

STATE OF CALIFORNIA, *et al.*,

*Plaintiffs-Appellees,*

v.

STATE OF ALABAMA, *et al.*,

*Proposed Intervener Defendants-Appellants,*

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Defendants-Appellees,*

Appeal from the U.S. District Court for the District of Massachusetts (1:26-cv-11581-IT)

# APPELLANTS' OPENING BRIEF

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL
Louis J. Capozzi, III, #1215872
*Solicitor General*
Graham D. Miller, #1222440
*Deputy Solicitor General*
J. Michael Patton*
*Deputy Solicitor General*
Benjamin S. Gilberg*
*Deputy Solicitor General*
815 Olive Street, Ste. #200
St. Louis, Missouri 63101
Tel. (573) 645-9662
Louis.Capozzi@ago.mo.gov
*Counsel for the State of Missouri*

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .... iv

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD .... viii

JURISDICTIONAL STATEMENT .... 1

STATEMENT OF ISSUES .... 2

INTRODUCTION .... 3

STATEMENT OF THE CASE .... 7

I. The Executive Order. .... 7

II. The litigation. .... 8

STANDARD OF REVIEW .... 11

SUMMARY OF THE ARGUMENT .... 12

ARGUMENT .... 15

I. Intervener States meet Rule 24(a)(2)'s requirements for intervention as of right. .... 15

A. Intervener States' motion to intervene was timely, and Intervener States have cognizable interests. .... 15

1. The motion was timely. .... 16

2. It is undisputed that Intervener States have cognizable interests. .... 17

B. Granting Plaintiff States relief would impair Intervener States' uncontested interests. .... 17

C. Intervener States' interests are not adequately represented by the federal government. .... 19

1. *Trbovich* requires intervention. .... 19

2. The presumption of adequate representation does not apply—the federal government *cannot* adequately represent another sovereign's interests. .... 23

II. The District Court abused its discretion in denying Intervener States permissive intervention. ........................................... 29

CONCLUSION ........................................................................................ 33

CERTIFICATE OF COMPLIANCE ...................................................... 37

CERTIFICATE OF SERVICE ................................................................ 37

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Alden v. Maine*,
527 U.S. 706 (1999) ........ 26

*Arizona v. California*,
460 U.S. 605 (1983) ........ 30

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) ........ 21, 27

*Arizona v. United States*,
567 U.S. 387 (2012) ........ 27

*Berger v. N.C. State Conf. of the NAACP*,
597 U.S. 179 (2022) ........ 13, 24

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
595 U.S. 267 (2022) ........ 16

*Cotter v. Mass. Ass'n of Minority Law Enf't Officers*,
219 F.3d 31 (1st Cir. 2000) ........ passim

*Daggett v. Comm'n on Governmental Ethics & Election,*
*Pracs.*, 172 F.3d 104 (1st Cir. 1999) ........ 24, 25

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ........ 17, 20

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) ........ 25

*Eng., Inc. v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992) ........ 25

*Env't Def. Fund, Inc. v. Higginson*,
631 F.2d 738 (D.C. Cir. 1979) ........ 26

*Ex parte Siebold*,
100 U.S. 371 (1879) .......... 21

*Foster v. Love*,
522 U.S. 67 (1997) .......... 21

*Fund For Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) .......... 2, 5, 13, 26

*Gamble v. United States*,
587 U.S. 678 (2019) .......... 26

*Gonzalez v. Arizona*,
677 F.3d 383 (9th Cir. 2012) .......... 21

*Gregory v. Ashcroft*,
501 U.S. 452 (1991) .......... 26

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
919 F.3d 638 (1st Cir. 2019) .......... 18

*John Doe No. 1 v. Glickman*,
256 F.3d 371 (5th Cir. 2001) .......... 12

*Kiaraeledeen v. Ashcroft*,
273 F.3d 542 (3d Cir. 2001) .......... 23

*Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*,
197 F.3d 560 (1st Cir. 1999) .......... 25

*Mille Lacs Band of Chippewa Indians v. Minnesota*,
989 F.2d 994 (8th Cir. 1993) .......... 25

*Mullane v. U.S. Dep't of Just.*,
113 F.4th 123 (1st Cir. 2024) .......... 15, 17

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
584 U.S. 453 (2018) .......... 26

*New York v. United States*,
505 U.S. 144 (1992) .......... 27

*Pub. Serv. Co. of N.H. v. Patch*,
136 F.3d 197 (1st Cir. 1998) .......... 25, 28

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......... 17, 20

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
584 F.3d 1 (1st Cir.2009) .......... passim

*Russello v. United States*,
464 U.S. 16 (1983) .......... 30

*Sanchez-Espinoza v. Reagan*,
770 F.2d 202 (D.C. Cir. 1985) .......... 18

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) .......... 6, 33

*South Dakota ex rel Barnett v. Dep't of Interior*,
317 F.3d 783 (8th Cir. 2003) .......... 29, 32

*State v. U.S. Fish & Wildlife Serv.*,
262 F.3d 13 (1st Cir. 2001) .......... 25, 28, 29

*Taucher v. Brown-Hruska*,
396 F.3d 1168 (D.C. Cir. 2005) .......... 23

*T-Mobile Ne. LLC v. Town of Barnstable*,
969 F.3d 33 (1st Cir. 2020) .......... passim

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) .......... passim

*Ungar v. Arafat*,
634 F.3d 46 (1st Cir. 2011) .......... 1

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002) .......... 5, 13, 25

*United States v. Pitney Bowes, Inc.*,
25 F.3d 66 (2d Cir. 1994) .......... 30, 32

*United States v. Printz*,
521 U.S. 898 (1997) ........................................................................ 27

*United States v. Union Elec. Co.*,
64 F.3d 1152 (8th Cir. 1995) ............................................................... 6

*Valley Citizens' Council for Clean Air v. Pennsylvania*,
674 F.2d 970 (3d Cir. 1982) ................................................................ 25

*Victim Rts. L. Ctr. v. Rosenfelt*,
988 F.3d 556 (1st Cir. 2021) ............................................... ix, 10, 25, 28

**Constitution**

U.S. Const. art. I, § 4, cl. 1 ............................................................ 27

**Statutes**

28 U.S.C. § 1292(b) ................................................................................ 1

28 U.S.C. § 1331 ...................................................................................... 1

**Rules**

Fed. R. Civ. P. 24(a) ....................................................................... passim

Fed. R. of Civ. P. 24(b) ...................................................... 2, 29, 30, 31

**Other Authorities**

President issued,
Executive Order No. 14,399 ............................................................ 3, 7

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

In Plaintiff States' own words, this case is about the "constitutional authority" of States "to administer state and federal elections." App. 34, R. Doc. 65 ¶ 1. Yet Intervener States were barred from defending their own election interests. This case therefore asks the important question of whether the federal government can adequately represent separate sovereigns—the Intervener States—in an election dispute, and relatedly whether this Court's presumption of adequate representation by the government extends when another sovereign seeks to intervene. *See Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561–63 (1st Cir. 2021). The parties are represented by experienced counsel who routinely litigate election and federalism cases. Appellants believe that oral argument will assist the Court in resolving this case

**JURISDICTIONAL STATEMENT**

This is an appeal from a denial of Intervener States' motion to intervene entered on May 1, 2026. App. 192–94, R. Doc. 140. The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. Intervener States' timely appealed on May 1, 2026. App. 195–99, R. Doc. 141. This Court has appellate jurisdiction under 28 U.S.C. § 1292(b). *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011); *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir.2009).

## STATEMENT OF ISSUES

**I. Whether the federal government can adequately represent the interests of Intervener States in an election dispute.**

- *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972)
- *Fund For Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003)
- Fed. R. of Civ. P. 24(a)(2)

**II. Whether it was an abuse of discretion to deny Intervener States permissive intervention when they were granted intervention in a materially identical consolidated case.**

- *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 38 (1st Cir. 2020)
- Fed. R. of Civ. P. 24(b)

# INTRODUCTION

After the President issued Executive Order No. 14,399, entitled *Ensuring Citizenship Verification and Integrity in Federal Elections* (the "EO"), he has been sued five times including this action. Three of those suits are pending in Washington D.C., while the other two—this case and the *League of Women Voters* case—are pending before the District Court below. Proposed Intervener States Missouri, Alabama, Florida, Indiana, Kansas, Louisiana, Montana, Nebraska, Oklahoma, South Carolina, South Dakota, and Texas (collectively, "Intervener States") sought to intervene in these cases to obtain resources promised by Section 2 of the EO, and to benefit from Section 3's envisioned improvements to the security of mail voting. In four of the five cases, including the *League of Women Voters* case, Intervener States were rightly granted intervention. However, in this action—the only one brought by States—the District Court denied Intervener States' motion to intervene.

Below, it was undisputed that Intervener States identified cognizable interests in seeking to intervene. *See* App. 92–95, R. Doc. 74 at 10–13 (identifying cognizable interests); App. 153, R. Doc. 109 at 1 (federal government not contesting); App. 164–65, R. Doc. 113 at 9–10

(Plaintiff States only contesting the scope of relief and not Intervener States' interests). Nevertheless, the District Court denied intervention as of right (and permissive intervention) based on its belief that the federal government adequately represents Intervener States. But that is wrong as a matter of law—for several reasons.

*First*, Intervener States' need only satisfy a "minimal" burden in showing the federal government does not adequately represent them—even if both share the same litigation objective. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Intervener States easily satisfy their "minimal" burden here because they have *different interests* than the federal government; whereas Intervener States have an interest in obtaining resources and enhancing the security of their own elections, the federal government has a broader public duty that "transcends [Intervener States'] narrower interest." *Id.* at 539. Additionally, as Plaintiff States agree, this case is about the "constitutional authority" of States "to administer state and federal elections." App. 34, R. Doc. 65 ¶ 1. Intervener States are highly unlikely to agree with the federal government on the appropriate division of authority over elections—even if Intervener States share the ultimate goal of seeing the EO upheld.

This divergence in interests and perspective makes it highly likely that the federal government and Intervener States will not take "precisely the same approach to the conduct of the litigation." *Trbovich*, 404 U.S. at 539. Indeed, that is already happening below—as the parties are making different substantive arguments.

*Second*, the District Court erred in applying this Court's rebuttable presumption that the government will adequately defend its own action. This Court has never applied that presumption in a case where one sovereign purports to act on behalf of *another sovereign*. Nor should it. Sister circuits with the same presumption of adequate representation recognize that it only "arises when the government is acting on behalf of a constituency that it represents." *E.g.*, *United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002). Moreover, at least one circuit has held that one sovereign does not adequately represent another. *See Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736–37 (D.C. Cir. 2003). Therefore, Federal Defendants do not and cannot adequately represent Intervener States' interests in this case. The District Court abused its discretion in holding otherwise.

*Lastly*, even if this Court upholds the denial of intervention as of

right, this is the rare case in which denying permissive intervention is an abuse of discretion. To start, the District Court erred in relying on adequacy of representation—a factor the Federal Rules of Civil Procedure make relevant *only* for intervention as of right. Further, the District Court acted irrationally in denying permissive intervention based on its belief that the federal government adequately represents Intervener Defendants in this case—while simultaneously granting permissive intervention in the practically identical and consolidated *League of Women Voters* case. The District Court provided no justification for that contradictory treatment—and Intervener States cannot think of one.

"Rule 24 is construed liberally, and [courts] resolve all doubts in favor of the proposed intervenors." *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995); *accord Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). In that spirit, this Court should quickly reverse so that Intervener States can protect their uncontested interests in this case.

## STATEMENT OF THE CASE

### I. The Executive Order.

To assist the Intervener States in guarding their elections, the President issued Executive Order No. 14,399, entitled Ensuring Citizenship Verification and Integrity in Federal Elections. 91 Fed. Reg. 17,125 (Mar. 31, 2026). The EO has two main parts.

Section 2 of the EO directs federal agencies to create a "State Citizenship List" and to transmit the list to "State election officials." EO § 2(a). The "State Citizenship List" is a list of a State's potentially lawful voters—"individuals confirmed to be United States citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State." *Id.*

Section 3 of the EO requires the U.S. Postal Service to initiate rulemaking about mail-in and absentee ballots. These rules will enhance the security of absentee voting. For example, Section 3(b)(i) provides that "Official Election Mail" shall bear tracking barcodes, which are already ubiquitous for other kinds of mail. Section 3(b)(ii) provides that States "may choose" to provide the USPS "a list of voters eligible to vote" absentee. Section 3(b)(iii) then provides that the USPS "shall not transmit" absentee ballots from unidentified individuals.

## II. The litigation.

On April 3, 2026, shortly after the EO was issued, Plaintiff States challenged the EO. R. Doc. 1. Plaintiff States were not alone. In the U.S. District Court for the District of Massachusetts, organizations also filed suit challenging the EO. *See League of Women Votes of Mass. v. Trump (LWVMA)*, No. 1:26-cv-11549-IT (D. Mass.). And in the District of Columbia, three separate actions were brought. *See DSCC v. Trump*, No. 1:26-cv-01114-CJN (D.D.C.); *League of United Latin Am. Citizens v. Exec. Office of the President*, No. 1:26-cv-01132-CJN (D.D.C.); *Nat'l Ass'n for the Advancement of Colored People v. Trump*, No. 1:26-cv-01151-CJN (D.D.C.). The Massachusetts cases were consolidated on April 14. R. Doc. 39.

Intervener States moved to intervene to defend the EO in the Massachusetts cases on April 21. R. Doc. 73. Intervener States also moved to transfer the cases to the District of Columbia. R. Doc. 75.[1] Plaintiff States opposed intervention, arguing that the federal government adequately represented Intervener States and that Plaintiff

[1] Federal Defendants had previously moved to transfer the cases on April 16. R. Doc. 55.

States had only moved for relief "as to Plaintiff States," meaning Intervener States' interests might not be impaired. App. 160–65, R. Doc. 113 at 5–10. In the consolidated case, the LWVMA Plaintiffs only opposed intervention if the cases were transferred, Opp'n, *LWVMA*, No. 1:26-cv-11549-IT (D. Mass. Apr. 27, 2026), ECF 88. Federal Defendants opposed intervention as of right because they intend to "vigorously defend" this suit, but they took no position on permissive intervention. App. 153, R. Doc. 109 at 1.

While the motions to intervene were pending, Plaintiff States moved for summary judgment, full declaratory relief against the EO, and a permanent injunction. R. Doc. 97; App. 106–46, R. Doc. 106. And in the consolidated case, the LWVMA Plaintiffs moved for a preliminary injunction against Section 3 of the EO. PI Mot., *LWVMA Case*, No. 1:26-cv-11549-IT (D. Mass Apr. 27, 2026), ECF 73, 74.

The District Court denied the motion to transfer on April 28. App. 171–75, R. Doc. 126. Three days later, the District Court denied intervention to Intervener States. For intervention as of right, the District Court rejected *Trbovich*'s "minimal" showing and said that showing is "ratcheted upward" in all cases where the federal government

is defending a challenged policy. App. 193, R. Doc. 140 at 2 (quoting *Victim Rts. L. Ctr.*, 988 F.3d at 561). The District Court therefore demanded a "strong affirmative showing" from Intervener States. *Id.* (*Cotter v. Mass. Ass'n of Minority Law Enf't Officers*, 219 F.3d 31, 34 (1st Cir. 2000)). In finding that Intervener States did not make that showing, the District Court relied on only one consideration: the federal government's promise to "vigorously defend this suit." *Id.*

The District Court also denied permissive intervention based on its belief that the federal government will "vigorously" defend this lawsuit. App. 194, R. Doc. 140 at 3. The District Court cited no precedent in denying permissive intervention. And, bizarrely, it *granted* permissive intervention in the materially identical *League of Women Voters* case, Order, No. 1:26-cv-11549-IT (D. Mass. May 1, 2026), ECF 106—even though the federal government also stated an intent to vigorously defend that suit. The District Court made no effort to harmonize those two permissive-intervention rulings.

Intervener States timely appealed. This Court granted expedited briefing. Order (May 7, 2026).

## STANDARD OF REVIEW

This Court reviews both the denial of a motion for intervention as of right and the denial of a motion for permissive intervention for an abuse of discretion. *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 38 (1st Cir. 2020). Within this abuse of discretion standard, legal determinations are reviewed *de novo* and factual findings for clear error. *Id.* "[A] material error of law constitutes a per se abuse of discretion." *R & G Mortg. Corp.*, 584 F.3d at 7.

Even then, the review for a denial of intervention as of right has "a special gloss." *T-Mobile*, 969 F.3d at 38. "Rule 24(a)(2)'s explicit standards 'considerably restrict the district court's discretion.'" *Cotter*, 219 F.3d at 34 (cleaned up) (citation omitted). A district court "'must' allow intervention as of right by parties who satisfy the enumerated requirements." *T-Mobile*, 969 F.3d at 38; *see also* Fed. R. Civ. P. 24(a) ("[T]he court *must* permit anyone to intervene who . . . ." (emphasis added)).

## SUMMARY OF THE ARGUMENT

The District Court abused its discretion in denying Intervener States' motion to intervene.

*First*, Intervener States only have a "minimal" burden to show that the federal government does not adequately represent their interests here. *See Trbovich*, 404 U.S. at 538 n.10. Intervener States easily satisfy that burden. To start, as in *Trbovich*, the federal government has broader interests that "transcend[] [Intervener States'] narrower interest[s]"; different interests are generally enough to render representation inadequate. *Id.* at 539; *see John Doe No. 1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) ("Given the [intervener's] minimal burden and [the federal agency's] duty to represent the broad public interest, not just the [intervener's], we conclude that [the agency's] representation of the [intervener] may be inadequate."). Further, in administering elections, there is constant tension between federal and state control such that it is impossible for the federal government to represent Intervener States' interests. Thus, as in *Trbovich*, the parties "may not always" take "precisely the same approach to the conduct of the litigation." 404 U.S. at 539. Indeed, that is already proving true in the

briefing below.

*Second*, the District Court erred in applying a presumption of adequate representation. *See* App. 193, R. Doc. 140 at 2. The Supreme Court recently reserved the question of whether *any* presumption of adequate representation is consistent with *Trbovich*. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022). But this Court has never applied that presumption when one sovereign claims to adequately represent a separate sovereign. Other federal appellate courts have *rejected* applying any presumption of adequate representation in that situation. *See Fund For Animals, Inc.*, 322 F.3d at 736–37; *City of Los Angeles*, 288 F.3d at 401. And *even if* a presumption applies here, Intervener States have overcome it given the tension between federal and state authority over elections.

*Third*, the District Court abused its discretion in denying permissive intervention in this case based on the federal government's alleged adequate representation. To start, the plain text of Federal Rules of Civil Procedure 24(a) and 24(b) strongly suggests it is *per se* error to deny permissive intervention solely based on a failure to prove entitlement to intervention as of right. Further, there was no rational

reason for the District Court to deny permissive intervention based on adequate representation in this case—while nevertheless granting it in the materially identical *League of Women Voters* case. In other words, there is no reason to think the federal government's defense of the EO will be any different between the two cases below.

## ARGUMENT

### I. Intervener States meet Rule 24(a)(2)'s requirements for intervention as of right.

To prevail on a motion for intervention as of right, putative interveners must demonstrate: "(1) the timeliness of [their] motion; (2) a concrete interest in the pending action; (3) 'a realistic threat' that resolution of the pending action will hinder [their] ability to effectuate that interest; and (4) the absence of adequate representation by any existing party." *T-Mobile*, 969 F.3d at 39 (quoting *R & G Mortg. Corp.*, 584 F.3d at 7); *see also* Fed. R. Civ. P. 24(a)(2) ("On [1] timely motion, the court must permit anyone to intervene who . . . [2] claims an interest relating to the property or transaction that is the subject of the action, and [3] is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, [4] unless existing parties adequately represent that interest.").

Intervener States easily satisfy these requirements.

#### A. Intervener States' motion to intervene was timely, and Intervener States have cognizable interests.

Neither of these factors were contested below, *see* App. 159–65, R. Doc. 113, so Plaintiff States forfeited any argument they may raise on appeal, *see Mullane v. U.S. Dep't of Just.*, 113 F.4th 123, 132 (1st Cir.

2024). Nor did the District Court *sua sponte* address these factors. *See* App. 192–94, R. Doc. 140. In any event, these factors are clearly met.

**1. The motion was timely.**

Intervener States timely filed their motion to intervene. *See R & G Mortg. Corp.*, 584 F.3d at 7 (laying out this Court's "four factor[]" timeliness inquiry). Intervener States moved to intervene less than three weeks after Plaintiff States filed their complaint. *See id.* at 8 ("diligently" acted). Additionally, Intervener States filed their motion even before the Federal Defendants had filed their responsive pleading and the commencement of substantial litigation, so intervention would not have "seriously disrupt[ed]" the proceedings. *See Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 281 (2022); *see also* Order, *LWVMA*, No. 1:26-cv-11549-IT (D. Mass. May 1, 2026), ECF 106 (granting intervention in consolidated case at identical stage in proceedings). Lastly, there is no prejudice to existing parties or special circumstances. *See R & G Mortg. Corp.*, 584 F.3d at 9–10 (prejudice arises out intervening at late stage in proceedings requiring special circumstances to overcome).

### *2.* It is undisputed that Intervener States have cognizable interests.

Intervener States have a concrete interest in Section 2 of the EO's envisioned State Citizenship Lists, because they are an optional resource that Intervener States can use in checking their voter registration lists. *Cf. Dep't of Com. v. New York*, 588 U.S. 752, 766–67 (2019). Intervener States also have a concrete interest in benefitting from Section 3's envisioned postal reforms, which would strengthen mail voting in Intervener States' elections. *Cf. Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). Again, no one contested below whether Intervener States had identified cognizable interests. *See Mullane*, 113 F.4th at 132.

### B. Granting Plaintiff States relief would impair Intervener States' uncontested interests.

The District Court did not address how this action could impair Intervener States' interests. But Plaintiff States have cursorily suggested that their requested relief—which they characterize as being limited "to Plaintiff States"—could allow the District Court to invalidate the EO's application only *within their jurisdictions*. *See* App. 164–65, R. Doc. 113 at 9–10; Opp'n to Mot. to Expedite (May 6, 2026).

This argument makes no sense. In their summary judgment brief, Plaintiff States sought declaratory relief against the entire EO. *See* App.

106–46, R. Doc. 106; App. 77, R. Doc. 65 at 45 (prayer for relief). That is the "practical equivalent" of nationwide relief "since it must be presumed that federal officers will adhere to the law as declared by the court." *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985) (Scalia, J.); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 638, 648 (1st Cir. 2019). If the District Court grants the requested relief and declares the EO illegal, that would prevent the federal government from implementing any part of the EO—including the parts that indisputably and directly benefit Intervener States. It thus follows that Plaintiff States' lawsuit—if it prevails—would impair Intervener States' uncontested interests in the EO. Fed. R. Civ. P. 24(a)(2).

Alternatively, if the Court considers only injunctive relief, it still seems clear that Plaintiff States' requested injunctive relief would impair Intervener States' interests. Plaintiff States' complaint asks for full injunctive relief against the EO. App. 77, R. Doc. 65 at 45 (prayer for relief 2). And although Plaintiff States' summary judgment brief contains a throwaway line about injunctive relief "as to Plaintiff States," App. 144, 146, R. Doc. 106 at 28, 30, it is quite unclear how the District Court could tailor injunctive relief. For example, Plaintiff States seek to

prohibit the USPS from considering the reforms outlined in Section 3 of the EO. App. 130–35, R. Doc. 106 14–19. If USPS is enjoined from engaging in rulemaking based on Section 3 of the EO, that would obviously impair Intervener States' uncontested interests. Fed. R. Civ. P. 24(a)(2). At the very least, if Plaintiff States are going to keep making this argument, they should explain to the Court *how* injunctive relief could be issued in a way that does not impair Intervener States' interests.

### C. Intervener States' interests are not adequately represented by the federal government.

The District Court denied Intervener States' motion solely because their interests "align seamlessly with Defendants' interests where the United States 'intends to vigorously defend this suit.'" App. 193, R. Doc. 140 at 2. This reasoning is as wrong as it is terse.

#### 1. *Trbovich* requires intervention.

The Supreme Court's *Trbovich* decision rejects the essential premise of the District Court's reasoning: Just because a proposed intervener has the same ultimate litigation *object* as the federal government *does not mean* the federal government adequately represents the intervener. 404 U.S. at 538–39.

In *Trbovich*, the Supreme Court unanimously held that the federal government did not adequately represent a union member—even though both were seeking to void a union election. *Id.* Analyzing Federal Rule of Civil Procedure 24(a), the Supreme Court explained that would-be interveners need only "show[] that representation of [their] interest[s] '*may be*' inadequate." *Id.* at 538 n.10 (emphasis added). This burden is "minimal." *Id.* In *Trbovich*, the federal government and the union member had the *exact same litigation object*, yet they did not have the same *interests* because the federal government's obligation to protect the public interest "transcend[ed] the narrower interest of the complaining union member." *Id.* at 538–39. That could result in the two parties not taking "the same approach to the conduct of the litigation." *Id.* at 539.

So too here. Intervener States have different "interest[s]" than the federal government. The federal government represents the *entire country*, whereas Intervener States represent *only* their citizens and are seeking election resources. *Cf. Dep't of Com. v. New York*, 588 U.S. at 766–67; *Purcell*, 549 U.S. at 4. Thus, the federal government's obligation to protect the public interest in this case "transcends the narrower

interest" of Intervener States. *Trbovich*, 404 U.S. at 539. *Trbovich* cannot be meaningfully distinguished on this point.

Additionally, because this case is about elections, Intervener States and the federal government are unlikely to take "the same approach to the conduct of the litigation." *Id.* at 539. The regulation of federal elections is "unique" because "it *always* falls within an area of concurrent state and federal power." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 n.6 (2013). "[T]he Elections Clause empowers both the federal and state governments to enact laws governing the mechanics of federal elections." *Gonzalez v. Arizona*, 677 F.3d 383, 391 (9th Cir. 2012) (en banc). Thus, the federal government and Intervener States are—in many contexts—*competitors* for authority over elections. *See, e.g.*, *Ex parte Siebold*, 100 U.S. 371, 392 (1879) (The Elections Clause allows Congress "to interfere merely to alter or add to existing regulations of the State[s']" elections "whenever Congress deems it expedient."); *Foster v. Love*, 522 U.S. 67, 74 (1997) ("When Louisiana's statute is applied to select from among congressional candidates in October, it conflicts with federal law . . . ."); *Inter Tribal Council of Ariz., Inc.*, 570 U.S. at 15 ("[T]he Elections Clause requires that Arizona's rule give way."). For

example, Missouri and the federal government are continuing to litigate the DOJ's prior threat to deploy federal poll watchers to Missouri. *See Missouri v. Blanche*, No. 26-1674 (8th Cir.). And more generally, even though Intervener States favor upholding the EO, they will oppose any interpretation of the law that vitiates their own authority over elections. The federal government, of course, has no reason to litigate this case with the same caution in mind. *See Trbovich*, 404 U.S. at 538–39.

Although *Trbovich* does *not* require a would-be intervener to point to actual litigation strategy differences, it is notable that Intervener States and the federal government have already made some different litigation choices early in the case. For example, the federal government is quite concerned about *which* federal defendants are in the case—and they have moved to dismiss the President, Department of Commerce, and Secretary of Commerce. App. 270–71, R. Doc. 157 at 30–31. Intervener States, by contrast, do not care about which federal defendants are sued; they just want the EO upheld. Additionally, Intervener States have squarely argued that a judicial order barring the President from instructing USPS would be unconstitutional. App. 223–25, R. Doc. 153 at 18–20. The Federal Defendants have not, perhaps because they are

"duty-bound to defend what Congress has enacted," and to avoid conflicts with them wherever possible. *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1175 (D.C. Cir. 2005) (Roberts, J.) (quoting *Kiaraeledeen v. Ashcroft*, 273 F.3d 542, 549 (3d Cir. 2001)). If one round of substantive briefs is any indication, Intervener States and the Federal Defendants will litigate this case quite differently—strongly suggesting intervention is warranted. *Trbovich*, 404 U.S. at 538.

*Trbovich* thus requires intervention as of right, and the District Court erred in concluding otherwise. This "material error of law constitutes a per se abuse of discretion." *R & G Mortg. Corp.*, 584 F.3d at 7.

#### 2. The presumption of adequate representation does not apply—the federal government *cannot* adequately represent another sovereign's interests.

To the extent the District Court relied on this Court's "rebuttable presumption that the government will adequately defend its action[s]," *see* App. 193, R. Doc. 140 at 2 (quoting *Cotter*, 219 F.3d at 35), this was erroneous.

This Court has recognized that—at least in some situations—there is a presumption that governments will adequately defend their

challenged policies. *See Cotter*, 219 F.3d at 35. This presumption is not based on the text of Rule 24(a)(2), and the Supreme Court recently reserved the question of whether any such presumption is *ever* appropriate "when a private litigant seeks to defend a law alongside the government or in any other circumstance." *Berger*, 597 U.S. at 197. But this Court need not reconsider its precedent because that precedent does not apply in this case.

First, the presumption does not arise when one sovereign attempts to intervene to defend another sovereign. As this Court has said, the presumption applies when "a governmental entity defending official acts adequately represents the interests of *its* citizens," *T-Mobile*, 969 F.3d at 39 (emphasis added), or "all citizens who support the statute," *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 111 (1st Cir. 1999). And while some of this Court's other precedents have stated the rule at a higher level of generality, *e.g.*, "that the government will defend adequately its action," *Cotter*, 219 F.3d at 35, to Intervener States' knowledge, all of these cases applying the presumption have arisen where a private entity has attempted to intervene on behalf of the

government.[2] Not once has this Court applied the presumption in a case where one sovereign claims it can adequately represent a separate sovereign.

Sister circuits that recognize a presumption of adequate representation have likewise limited its scope. It "arises when the government is acting on behalf of a constituency that it represents." *City of Los Angeles*, 288 F.3d at 401; *see Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (when "the would-be intervenor is a citizen or subdivision of the governmental entity"); *see also Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) ("[T]o intervene in a suit in which the state is already a party, a subdivision of the state must overcome this presumption."); *Mille Lacs*

[2] *See, e.g.*, *Victim Rts. L. Ctr.*, 988 F.3d at 561–63 (public interest groups on behalf of federal government); *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205–10 (1st Cir. 1998) (corporations, non-profits, an agency of the same state, and a city on behalf of state utility); *T-Mobile*, 969 F.3d at 38 (two local residents on behalf of town); *State v. U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001) (conservation groups on behalf of federal agency); *Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) (trade association and wholesalers on behalf of state commission); *Daggett*, 172 F.3d at 112–13 (1st Cir. 1999) (candidates and office holders on behalf of state commission); *Cotter*, 219 F.3d at 35 (association on behalf of city); *Conservation L. Found. of New. Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (regulated entity on behalf of agency).

*Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000 (8th Cir. 1993) (same); *Env't Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979) (same).

For example, the D.C. Circuit has held that one sovereign does not adequately represent the interests of another sovereign, even though "there may by partial congruence of interests." *Fund For Animals, Inc.*, 322 F.3d at 736–37. There, the federal defendants' "obligation is to represent the interests of the American people" differed from a foreign government's interest in seeing a challenged federal policy upheld. *Id.* at 736.

The same is true here: The federal government does *not represent* the States in a case like this. Under our Constitution, States are separate sovereigns with distinct constitutional powers and responsibilities. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) ("[B]oth the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of 'dual sovereignty.'" (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991))); *see also Gamble v. United States*, 587 U.S. 678, 688 (2019) ("[T]he people, by adopting the Constitution, 'split the atom of sovereignty.'" (quoting *Alden*

*v. Maine*, 527 U.S. 706, 751 (1999))). In many contexts, federal and state authority are *pitted against each other*. *See, e.g.*, *New York v. United States*, 505 U.S. 144, 166 (1992) (Congress cannot regulate state governments' regulation of interstate commerce); *United States v. Printz*, 521 U.S. 898, 935 (1997) (federal government cannot conscript state officers to administer federal program); *Arizona v. United States*, 567 U.S. 387, 400–15 (2012) (state regulation of immigration preempted by federal law). That is certainly true with respect to federal elections—where the U.S. Constitution's Elections Clause recognize that both sovereigns can regulate. U.S. Const. art. I, § 4, cl. 1; *see also Inter Tribal Council of Ariz.*, 570 U.S. at 8 ("The Elections Clause has two functions. Upon the States it imposes the duty ('*shall* be prescribed') to prescribe the time, place, and manner of electing Representatives and Senators; upon Congress it confers the power to alter those regulations or supplant them altogether.").

Unsurprisingly, Plaintiff States seem to *recognize* there is tension between federal and state authority in this case. Plaintiff States themselves complain that the EO invades their "sovereign interests in conducting elections in accordance with . . . state and federal law." App.

66, R. Doc. 65 ¶ 138; *see also id.* ¶ 175. Suggesting that Intervener States do *not* have an interest in a case like that is implausible.

This case is therefore far from any case in which this Court has applied a presumption of adequate representation. But even if this Court ignores state sovereignty concerns and broadly applies the presumption of adequate representation against States, Intervener States still rebut it. Under this presumption, this Court "ratchet[s] upward" the proposed intervenors' burden of persuasion of showing the government "is not fairly representing the applicants' interests." *Victim Rts. L. Ctr.*, 988 F.3d at 561 (quoting *Patch*, 136 F.3d at 207). "[P]erfect identity of motivational interests between the movant-intervenor and the government [is not] necessary to a finding of adequate representation." *Id.* at 561. And notably, this Court has cautioned against the "danger in a mechanistic application" of the presumption. *Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d at 19. The presumption "means no more in this context than calling for an adequate explanation as to why what is assumed—here, adequate representation—is not so." *Id.*

Here, for the reasons already provided, Intervener States have an "adequate explanation" as to why the federal government does not

adequately represent their interests. *Id.* Intervener States wish to see the EO upheld, but they also wish to safeguard state authority over elections. App. 92–95, R. Doc. 74 at 10–13; *accord Cotter*, 219 F.3d at 35–36 (suggesting potential conflict of interest is significant to this analysis). And as discussed above, in just one round of substantive briefing, Intervener States have chosen to litigate the case quite differently than the Federal Defendants. *Compare* App. 201–25, R. Doc. 153, *with* App. 231–88, R. Doc. 157. Different interests lead to different litigation strategic choices—exactly the situation *Trbovich* said intervention was required in.

## II. The District Court abused its discretion in denying Intervener States permissive intervention.

Intervener States acknowledge that appellate courts should only rarely reverse district court denials of permissive intervention. *See, e.g.*, *South Dakota ex rel Barnett v. Dep't of Interior*, 317 F.3d 783, 787 (8th Cir. 2003). District courts are granted substantial leeway to assess the factors outlined in Rule 24(b)—like timeliness and whether intervention would prejudice parties. *See T-Mobile*, 969 F.3d at 40–41; *see also* Fed. R. Civ. P. 24(b).

But in this unusual case, the District Court did abuse its discretion—for two reasons. *First*, the District Court erred in denying permissive intervention based *solely* on inadequate representation—an element that exists only for intervention as of right. *Compare* Fed. R. Civ. P. 24(a)(2), *with id.* 24(b). The rules governing intervention as of right and permissive intervention are distinct. *See* Fed. R. Civ. P. 24(a)–(b). The choice to require a movant to show inadequate representation for intervention as of right—but not permissive intervention—can only be understood as deliberate. *See Russello v. United States*, 464 U.S. 16, 23 (1983). Had the Advisory Committee meant to replicate Rule 24(a)(2)'s adequacy of representation in Rule 24(b), "it presumably would have done so expressly." *Id.* Allowing district courts to deny permissive intervention based solely on a failure to prove entitlement to intervention as of right simply writes Rule 24(b) out of the Federal Rules of Civil Procedure. *Cf. Arizona v. California*, 460 U.S. 605, 614–15 (1983) (declining to address intervention as of right in light of alleged adequate representation but granting permissive intervention); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73–74 (2d Cir. 1994) (giving deference to

district court's permissive intervention ruling where district court had relied on permissible considerations of prejudice to parties).[3]

*Second*, the District Court's decision to deny permissive intervention in this case makes no sense given its decision to grant permissive intervention in the *League of Women Voters* case. *Compare* App. 192–94, R. Doc. 140, *with* Order, *LWVMA*, No. 1:26-cv-11549-IT (D. Mass. May 1, 2026), ECF 106. These two cases—which are consolidated for purposes of briefing and argument—are materially identical. The plaintiffs seek effectively the same relief—the full non-enforcement of the EO. *Compare* App. 77, R. Doc. 65 at 45 (prayer for relief), *with* Compl. at 54 (prayer for relief), *LWVMA*, No. 1:26-cv-11549-IT (D. Mass. Apr. 2, 2026), ECF 1. The plaintiffs in both cases make highly similar arguments. *Compare* App. 106–46, R. Doc. 106, *with* PI Br., *LWVMA*, No. 1:26-cv-11549-IT (D. Mass. Apr. 23, 2026), ECF 74. In both cases,

[3] Intervener States acknowledge that this Court previously affirmed a similar district court's denial of permissive intervention. *Victim Rts. L. Ctr.*, 988 F.3d at 564. But this Court based its decision "on [the] record" in that case, *id.*, suggesting that Court intended to limit its holding to that case's particular facts. Even if this Court agrees with Intervener States on permissive intervention, District Courts would be free to tie a particular case's "record" to *relevant* considerations under Rule 24(b)—like prejudice to other parties. Fed. R. Civ. P. 24(b)(3).

the federal government committed to vigorously defending the EO. *See* App. 153, R. Doc. 109 at 1; U.S. Resp. to Mot. to Intervene at 1, *LWVMA*, No. 1:26-cv-11549-IT (D. Mass. Apr. 24, 2026), ECF 79.

Why, then, is the federal government's vigorous defense of the EO dispositive to permissive intervention in this case, when it was not dispositive in the *League of Women Voters* case? The District Court offered no explanation, and Intervener States cannot think of one.

District Courts have wide discretion when ruling on permissive intervention—but it is not unlimited. *See Barnett*, 317 F.3d at 787; *Pitney Bowes*, 25 F.3d at 73–74. Affirming here would be tantamount to eliminating appellate review over permissive intervention decisions. That, of course, is not the law.

* * *

Plaintiff States insist this case features an important dispute about the division of authority over elections between the States and the federal government. App. 66, 75, R. Doc. 65 ¶¶ 138, 175. If that is right, the only principled decision is to give Intervener States a seat at the table—and to ensure divergent interests are fairly considered before judgment is

entered. Intervention in a case like this is the soundest way to ensure "greater justice [is] attained." *Espy*, 18 F.3d at 1205.

## CONCLUSION

The Court should reverse.

Date: May 11, 2026

Respectfully submitted,

**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

*/s/ A. Barrett Bowdre*
A. Barrett Bowdre, 1222562
*Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III,1215872
*Solicitor General*
Graham D. Miller, #1222440
*Deputy Solicitor General*
J. Michael Patton*
*Deputy Solicitor General*
Benjamin S. Gilberg*
*Deputy Solicitor General*
Missouri Attorney General Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Graham.Miller@ago.mo.gov
Michael.Patton@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov

**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst*
*Solicitor General*
Jason J. Muehlhoff*
*Chief Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com

**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

/s/ *James A. Barta*
James. A Barta*
*Solicitor General*
Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez, 1223913
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov

**LIZ MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
*Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan*
*Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov

**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett*
*Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
*Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate*
*Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn*
*Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

/s/ *David Bryant*
David Bryant*
*Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

/s/ *Ian D. Prior*
Ian D. Prior (Bar No. 655704)
America First Legal Foundation
611 Pennsylvania Ave S.E. No. 231
Washington, D.C. 20003
(410) 205-9681
ian.prior@aflegal.org

* *Pro hac vice forthcoming*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(i) in that it contains 6,043 words excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) in that this document has been prepared in a proportionally spaced typeface using Microsoft Word (size 14 Century Schoolbook font).

*/s/ Louis J. Capozzi, III*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above was electronically filed by using the CM/ECF system. Counsel for Appellee will receive a copy of the above document through the CM/ECF system on May 11, 2026.

*/s/ Louis J. Capozzi, III*

No. 26-1506

**In the United States Court of Appeals**
**For the First Circuit**

STATE OF CALIFORNIA, *et al.*,

*Plaintiffs-Appellees,*

v.

STATE OF ALABAMA, *et al.*,

*Proposed Intervener Defendants-Appellants,*

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Defendants-Appellees,*

Appeal from the U.S. District Court for the District of Massachusetts (1:26-cv-11581-IT)

**ADDENDUM TO APPELLANTS' OPENING BRIEF**

**CATHERINE L. HANAWAY**
Missouri Attorney General
Louis J. Capozzi, III, #1215872
*Solicitor General*
Graham D. Miller, #1222440
*Deputy Solicitor General*
J. Michael Patton*
*Deputy Solicitor General*
Benjamin S. Gilberg*
*Deputy Solicitor General*
815 Olive Street, Ste. #200
St. Louis, Missouri 63101
Tel. (573) 645-9662
Louis.Capozzi@ago.mo.gov
*Counsel for the State of Missouri*

## TABLE OF CONTENTS

Order on Motion to Intervene (Doc. 140)................................................Add.001

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants. | * * * * * * * * * * * * | Civil Action No. 1:26-cv-11581-IT |

ORDER ON MOTION TO INTERVENE

May 1, 2026

TALWANI, D.J.

Applicants State of Alabama, State of Florida, State of Indiana, State of Kansas, State of Louisiana, State of Missouri, State of Montana, State of Nebraska, State of Oklahoma, State of South Carolina, State of South Dakota, and State of Texas seek leave to intervene as of right under Fed. R. Civ. Pro. 24(a), or in the alternative, seek permissive intervention under Fed. R. Civ. Pro. 24(b). Mot. to Intervene 1–2 [Doc. No. 73].

Defendants oppose intervention as of right, stating that "[t]o the extent that Intervenor States have an interest in this matter, it will be adequately represented by the United States[.]" Defs.' Resp. 1 [Doc. No. 109].

An applicant for intervention as of right must show that it "is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). "The requirement of [] Rule [24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v.

United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972) (citing 3B J. Moore, Federal Practice 24.09—1 (4) (1969)). But "the burden of persuasion is ratcheted upward" when the movant seeks to intervene as a defendant alongside a government entity. Victim Rts. L. Ctr. v. Rosenfelt, 988 F.3d 556, 561 (1st Cir. 2021) (quoting Pub. Serv. Co. of New Hampshire v. Patch, 136 F.3d 197, 207 (1st Cir. 1998)). In that circumstance, the First Circuit "start[s] with a rebuttable presumption that the government will defend adequately its action[.]" Id. (quoting Cotter v. Mass. Ass'n of Minority L. Enf't Officers, 219 F.3d 31, 35 (1st Cir. 2000)). "A successful rebuttal 'requires "a strong affirmative showing" that the agency (or its members) is not fairly representing the applicants' interests.'" Id. (quoting Patch, 136 F.3d at 207) (internal quotations omitted). An applicant's "interest in making additional . . . arguments in defense of government action does not render the government's representation inadequate." Id. at 562 (citing Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560, 567 (1st Cir. 1999). And "perfect identity of motivational interests between the movant-intervenor and the government" is not necessary to a finding of adequate representation. Id.

Here, Applicants' interests in defending against Plaintiffs' suit align seamlessly with Defendants' interests where the United States "intends to vigorously defend this suit." Defs.' Resp. 1 [Doc. No. 109]. Applicants therefore have not met their burden to intervene as of right alongside Defendants.

Defendants take no position on the request for permissive intervention. Id. Plaintiffs State of California, et al. ("Plaintiff States") object to permissive intervention where Plaintiff States only seek relief as to the Plaintiff States. Pls.' States' Opp. to Mot. to Intervene [Doc. No. 113]. Applicants contend that if relief is granted, the limits asserted by Plaintiff States are not plausible. Reply Br. 4, 8. [[127]]. Applicants have provided the court with no reason to find that

arguments as to any spill-over effect of the relief requested by the Plaintiff States will not be vigorously asserted by the government. Accordingly, the court will deny permissive intervention.

Accordingly, Applicants' Motion to Intervene [Doc. No. 73] is DENIED, but Applicants may participate as *amicus curiae*. Where Applicants have been granted leave to intervene in Civil Action No. 1:26-cv-11581, and where briefing on certain motions has been consolidated with the briefing in that action, see Order [Doc. No. 88], Applicants may cross-file their briefs as intervenors in Civil Action No. 1:26-cv-11549 as briefs of *amicus curiae* in this action.

IT IS SO ORDERED.

May 1, 2026

/s/ Indira Talwani
United States District Judge