No. 26-1506

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

STATE OF CALIFORNIA; COMMONWEALTH OF MASSACHUSETTS; STATE OF NEVADA; STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; STATE OF RHODE ISLAND; STATE OF VERMONT; COMMONWEALTH OF VIRGINIA; STATE OF WISCONSIN; JOSH SHAPIRO, in his official capacity as Governor of the Commonwealth of Pennsylvania,

*Plaintiffs-Appellees,*

*v.*

DONALD J. TRUMP, in the official capacity as President of the United States; *et al.*,

*Defendants,*

STATE OF ALABAMA; STATE OF MISSOURI; STATE OF FLORIDA; STATE OF INDIANA; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF OKLAHOMA; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TEXAS,

*Interested Parties-Appellants.*

On Appeal from the United States District Court
for the District of Massachusetts

**ANSWERING BRIEF OF PLAINTIFFS-APPELLEES**

*(Counsel listed on inside cover)*

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*
M. PATRICK MOORE, JR.
*First Assistant Attorney General*
DAVID C. KRAVITZ
*State Solicitor*
VANESSA A. ARSLANIAN
*State Trial Counsel*
JARED B. COHEN
JAK KUNDL
*Assistant Attorneys General*
One Ashburton Place
Boston, MA 02108
(617) 963-2107
Vanessa.Arslanian@mass.gov

*Counsel for the Commonwealth of Massachusetts*

NICHOLAS W. BROWN
*Attorney General of Washington*
TERA M. HEINTZ
CRISTINA SEPE
KARL D. SMITH
*Deputy Solicitors General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Tera.Heintz@atg.wa.gov

*Counsel for the State of Washington*

ROB BONTA
*Attorney General of California*
SAMUEL T. HARBOURT
*Solicitor General*
JOSHUA A. KLEIN
*Supervising Deputy Solicitor General*
JANE REILLEY
IAN FEIN
*Deputy Solicitors General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
SETH E. GOLDSTEIN
*Supervising Deputy Attorney General*
ANNE P. BELLOWS
KEVIN L. QUADE
LISA C. EHRLICH
MALCOLM A. BRUDIGAM
MICHAEL S. COHEN
ROBERT WILLIAM SETRAKIAN
*Deputy Attorneys General*
California Department of Justice
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102-7004
(415) 510-3879
Jane.Reilley@doj.ca.gov

*Counsel for the State of California*

AARON D. FORD
*Attorney General of Nevada*
HEIDI PARRY STERN
*Solicitor General*
K. BRUNETTI IRELAND
*Chief of Special Litigation*
1 State of Nevada Way
Las Vegas, NV 89119
(702) 486-9246
hstern@ag.nv.gov

*Counsel for the State of Nevada*

*(Additional counsel listed in signature block)*

# TABLE OF CONTENTS

**Page**


Introduction ........ 1

Statement of the issues ........ 3

Statement of the case ........ 3

- A. Executive Order 14399 ........ 3
- B. Plaintiff States' request to enjoin enforcement of the Executive Order only in their States ........ 7
- C. Coordinated briefing and denial of Defendants' transfer motions in this case and *League of Women Voters* ........ 7
- D. Appellants' motion to intervene ........ 9

Summary of argument ........ 13

Standard of review ........ 14

Argument ........ 15

- I. The district court properly denied intervention as of right ........ 15
  - A. The relief sought by Plaintiff States will not impair Appellants' interests ........ 16
  - B. Appellants' interests are adequately represented by Defendants ........ 20
- II. The district court properly denied permissive intervention ........ 26

Conclusion ........ 29

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Caterino v. Barry*
922 F.2d 37 (1st Cir. 1990)....................26

*Cotter v. Mass. Ass'n of Minority L. Enf't Officers*
219 F.3d 31 (1st Cir. 2000)....................11

*Daggett v. Comm'n on Gov't Ethics and Election Practices*
172 F.3d 104 (1st Cir. 1999)....................23

*Edwards v. City of Houston*
78 F.3d 983 (5th Cir. 1996) ....................22

*Fund for Animals, Inc. v. Norton*
322 F.3d 728 (D.C. Cir. 2003)....................22, 23

*In re Financial Oversight and Management Board for Puerto Rico*
919 F.3d 638 (1st Cir. 2019)....................19

*Int'l Paper Co. v. Inhabitants of Town of Jay*
887 F.2d 338 (1st Cir. 1989)....................15

*Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*
197 F.3d 560 (1st Cir. 1999)....................21, 25, 27, 28

*Melone v. Coit*
100 F.4th 21 (1st Cir. 2024)....................15

*Pub. Serv. Co. of N.H. v. Patch*
136 F.3d 197 (1st Cir. 1998)....................11, 20, 26

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*
584 F.3d 1 (1st Cir. 2009)....................15

*Sanchez-Espinoza v. Reagan*
770 F.2d 202 (D.C. Cir. 1985)....................19

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*SEC v. LBRY, Inc.*
26 F.4th 96 (1st Cir. 2022)....................24, 25

*State v. Director, U.S. Fish & Wildlife Serv.*
262 F.3d 13 (1st Cir. 2001)....................24

*T-Mobile Ne. LLC v. Town of Barnstable*
969 F.3d 33 (1st Cir. 2020)....................*passim*

*Trbovich v. United Mine Workers of Am.*
404 U.S. 528 (1972)....................10, 20, 23, 24

*Trump v. CASA, Inc.*
606 U.S. 831 (2025)....................19

*Ungar v. Arafat*
634 F.3d 46 (1st Cir. 2011)....................14

*United States v. City of Los Angeles*
288 F.3d 391 (9th Cir. 2002)....................22

*United States v. Mendoza*
464 U.S. 154 (1984)....................19

*Victim Rts. L. Ctr. v. Rosenfelt*
988 F.3d 556 (1st Cir. 2021)....................*passim*

**STATUTES**

United States Code, Title 52
§ 20507(i)(1)....................6
§ 20701....................6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**RULES**

Federal Rules of Civil Procedure
Rule 24 ....................15, 24, 25
Rule 24(a)....................9, 10, 20, 26
Rule 24(a)(2)....................15
Rule 24(b) ....................10, 26
Rule 24(c)....................9

**OTHER AUTHORITIES**

Executive Order 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026), *Ensuring Citizenship Verification and Integrity in Federal Elections* ....................*passim*

## INTRODUCTION

The President issued an Executive Order that seeks to unlawfully invade Plaintiff States' authority to administer their own elections and threatens Plaintiff States' officials with criminal prosecution if they do not comply. Plaintiff States filed a lawsuit challenging the Executive Order and sought an injunction that would prevent the federal government from enforcing the Executive Order against Plaintiff States. The federal government has responded by vigorously defending the Executive Order and moving to dismiss all of Plaintiff States' claims.

Even though Plaintiff States seek injunctive relief that is limited only to themselves, and notwithstanding the federal government's zealous defense of the Executive Order, Appellants—a coalition of States that support the Executive Order—moved to intervene to defend the lawsuit alongside Defendants. The district court denied Appellants' motion to intervene, concluding that Appellants were not entitled to either intervention as of right or permissive intervention. Because the district court acted well within its discretion in so holding, this Court should affirm.

Appellants are not entitled to intervene as of right, because they have not established any realistic threat that the outcome of this case will impair their interests. Plaintiff States are not asking the district court to prevent Defendants from taking the actions described in the Executive Order in Appellants' States.

Instead, Plaintiff States seek a tailored order enjoining enforcement of the Executive Order only against their own States—a limitation that distinguishes this case from another case challenging the same Executive Order in which the district court did permit Appellants to intervene. And Plaintiff States are not seeking relief that would prevent Appellants from making any changes to the administration of their own elections as they see fit. Beyond that, the federal government is adequately representing Appellants' interests in this matter. The federal government is vigorously defending the Executive Order, and under the particular circumstances of this case, Appellants' interests align seamlessly with those of the federal government.

The district court also did not abuse its discretion in denying Appellants permissive intervention. A district court has broad discretion when deciding an application for permissive intervention, and here the court's decision is supported by entirely rational reasons—not just the vigor of the existing Defendants' efforts, the overwhelming congruence of the Defendants' and Appellants' arguments, and the narrowness of the Plaintiff States' requested relief, but also Appellants' ability to present their arguments as amici. The trial court's order should be affirmed.

## STATEMENT OF THE ISSUES

1. Whether the district court acted within its discretion in denying Appellants' motion for intervention as of right.

2. Whether the district court acted within its discretion in denying Appellants' motion for permissive intervention.

## STATEMENT OF THE CASE

The Plaintiff States, which are Appellees here, seek to enjoin the federal government from enforcing *in their own States* an Executive Order that purports to regulate state officials' administration of elections beyond the bounds allowed by federal statutes and the Constitution. The Appellants are other States, which sought to intervene because they support the policies the Executive Order promotes. The district court denied intervention, leading to this appeal.

### A. Executive Order 14399

On March 31, 2026, President Trump issued an Executive Order entitled "Ensuring Citizenship Verification and Integrity in Federal Elections." Exec. Order No. 14399, 91 Fed. Reg. 17125 (Mar. 31, 2026). Three provisions of the Order are at issue in this case.

Section 2 directs the Secretary of Homeland Security, in coordination with other federal officials, to create "State Citizenship Lists" of "individuals confirmed to be United States citizens who will be above the age of 18 at the time of an

upcoming Federal election and who maintain a residence in the subject State." Exec. Order No. 14399, § 2(a). After compiling these lists, which "shall be derived" from federal records and database sources, the Secretary must transmit them to States' chief elections officials "no fewer than 60 days before each regularly scheduled Federal election[.]" *Id.* Section 2 directs the Department of Justice to "prioritize the investigation and, as appropriate, the prosecution of State and local officials or any others involved" in federal elections administration "who issue Federal ballots to individuals not eligible to vote in a Federal election." *Id.* § 2(b). This threat of prosecution is designed to force State officials to deny the franchise to anyone who is not included on the federal government's "State Citizenship List"—even though that list may be error-ridden and may incorrectly identify U.S. citizens as non-citizens. App. 126, Dkt. 106 at 10 (Plaintiff States' memorandum of points and authorities in support of motion for summary judgment).

Section 3 concerns mail voting. It directs that "no fewer than 90 days" before any federal election, "any State may choose to notify" the United States Postal Service if the State intends to allow mail-in or absentee ballots and whether it intends to submit to the Postal Service a "list of voters eligible to vote" by mail in that election. Exec. Order No. 14399, § 3(b)(ii). The Executive Order further directs the Postal Service to "provide each State with a list of individuals" who are

enrolled with the Postal Service "for mail-in or absentee ballots provided by such State." *Id.* § 3(b)(iv). The Executive Order prohibits the Postal Service from transmitting a completed mail ballot from any voter not included on that Postal Service-generated list. *Id.* § 3(b)(iii), (iv). Although the Executive Order directs the Postal Service to establish "procedures enabling each State to routinely supplement and provide suggested modifications or amendments to" that list, it does not require the Postal Service to accept the State's changes. *Id.* § 3(b)(iii), (v). Like Section 2, Section 3 threatens criminal prosecution for States, elections officials, and voters by requiring the Postal Service to "coordinate with the USPS Office of Inspector General and the Department of Justice for investigation of suspected unlawful use of the mail involving Federal election materials." *Id.* § 3(c). Section 3 also requires the Postal Service to adopt regulations that govern numerous, specific aspects of mail ballot envelopes, such as specific markings and tracking technology. *Id.* § 3(b), (d). Section 3's provisions would coerce States into providing voter information to the Postal Service, because a State's refusal to do so could prevent that State's eligible voters from receiving or returning their mail ballots—a catastrophic consequence for those who rely on mail ballots to vote. App. 133, Dkt. 106 at 17 (Plaintiff States' memorandum of points and authorities in support of motion for summary judgment).

Section 5 reiterates threats of prosecutions for State and local entities and elections officials and provides that States "should preserve, for a 5-year period, all records and materials—excluding ballots cast—evidencing voter participation in any Federal election." Exec. Order No. 14399, § 5. That five-year period far exceeds the record-keeping obligations otherwise required under federal law. *See, e.g.*, 52 U.S.C. § 20507(i)(1) (requiring States to retain for two years "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters"); *id*. § 20701 (requiring election officials to retain for twenty-two months records "relating to any application, registration, payment of poll tax, or other act requisite to voting" in an election). Although the Executive Order frames the five-year preservation period as discretionary, States face serious pressure to comply, because the immediately preceding provisions—which direct federal officials to "deter and address noncompliance with Federal law" and solicit "evidence" for use in elections-related investigations and prosecutions (Exec. Order No. 14399, § 5)—suggest that a State's refusal to retain records for five years could prejudice the State in such an investigation or prosecution. App. 135, Dkt. 106 at 19 (Plaintiff States' memorandum of points and authorities in support of motion for summary judgment).

### B. Plaintiff States' Request to Enjoin Enforcement of the Executive Order Only in Their States

Plaintiff States filed a complaint and then an amended complaint, in the U.S. District Court for the District of Massachusetts, challenging these three provisions of the Executive Order. App. 33, Dkt. 65 (amended complaint). The defendants are the President and several federal agencies and officials whom the Executive Order charged with the Order's implementation. App. 40-42, Dkt. 65 at ¶¶ 38-56.

Plaintiff States subsequently moved for summary judgment, requesting a permanent injunction that would enjoin Defendants (except the President) from implementing the challenged Executive Order provisions "with respect to Plaintiff States." Dkt. 97-1 at 2 (proposed order granting motion for summary judgment); *see also* App. 146, Dkt. 106 at 30 (memorandum of points and authorities in support of motion for summary judgment, requesting a permanent injunction of the challenged provisions "as to Plaintiff States"). Defendants opposed the summary judgment motion on the merits and cross-moved to dismiss on jurisdictional and other threshold grounds. *See* App. 230, Dkt. 157.

### C. Coordinated Briefing and Denial of Defendants' Transfer Motions in This Case and *League of Women Voters*

Shortly before Plaintiff States filed their case, nonprofit organizations filed their own lawsuit challenging the Executive Order in the same district court. *See League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT (D. Mass., filed April 2, 2026). In contrast to the limited injunctive relief sought by Plaintiff

States, the plaintiffs in *League of Women Voters* moved for a preliminary injunction that would prevent Postal Service officials from implementing Section 3 of the Executive Order anywhere in the country. *See League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT, Dkt. 73 (motion for preliminary injunction) and Dkt. 73-1 (proposed order granting motion for preliminary injunction). The federal defendants opposed the *League of Women Voters* plaintiffs' motion for a preliminary injunction and moved to dismiss the complaint. *Id*. Dkt. 125.

The district court ordered consolidation of the cases for hearing on the parties' motions, aligned the two cases' briefing schedules, and permitted Defendants to file combined, overlength briefs that address both cases together. *See League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT, Dkt. 57 (order adopting briefing schedule). Hearings on the summary judgment motion and motion to dismiss in this case, as well as the preliminary injunction motion and motion to dismiss in *League of Women Voters*, will be held together on June 2. *Id.*

Defendants then moved to transfer this case and the *League of Women Voters* case to the U.S. District Court for the District of Columbia, where three other cases challenging the Executive Order had been filed and consolidated. Dkt. 55; *League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT (D. Mass.), Dkt. 19; *see* Consolidation Order, *DSCC v. Trump*, No. 1:26-cv-01114-CJN (D.D.C. Apr. 9,

2026), Dkt. 27.[1] The district court denied transfer in both cases. App. 171, Dkt. 126; *League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT, Dkt. 98.

**D. Appellants' Motion to Intervene**

While Defendants' motion to transfer was pending, Appellants moved to intervene in this case. App. 83, Dkt. 74. Appellants did not attach a "pleading that sets out the claim or defense for which intervention is sought," as Federal Rule of Civil Procedure 24(c) requires. Instead, they submitted a proposed motion to transfer the case to the District of Columbia, which largely summarized and rehashed the transfer arguments already made by Defendants. *Compare* Dkt. 76 at 2-3 (memorandum of points and authorities in support of Appellants' proposed motion to transfer), *with* Dkt. 56 at 5-15 (memorandum of points and authorities in support of Defendants' motion to transfer). Appellants also sought to intervene in the *League of Women Voters* case, similarly attaching a proposed motion to transfer the case instead of a responsive pleading. *See League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549-IT (D. Mass.), Dkts. 44-47.

Plaintiff States opposed Appellants' intervention. App. 155, Dkt. 113. As to intervention as of right under Rule 24(a), Plaintiff States noted that their pending summary judgment motion seeks to enjoin the Executive Order only as to Plaintiff

[1] The other two cases filed in the District of Columbia are *League of United Latin Am. Citizens v. Exec. Office of the President*, No. 1:26-cv-01132-CJN (D.D.C.) and *NAACP v. Trump*, No. 1:26-cv-01151-CJN (D.D.C.).

States, not Appellants. App. 164-165, Dkt. 113 at 9-10 (citing Dkt. 97-1 at 2-4).[2] Plaintiff States further asserted that Appellants had failed to show that the federal government will not adequately represent their interests in this case. App. 159-163, Dkt. 113 at 4-8. Plaintiff States argued that permissive intervention under Rule 24(b) should be denied for similar reasons. App. 165, Dkt. 113 at 10. However, Plaintiff States noted that they would not oppose Appellants' participation as amici. *Id.*

Defendants, for their part, similarly asserted that the district court should deny intervention as of right because "to the extent [Appellants] have an interest in this matter, it will be adequately represented by the United States, which intends to vigorously defend this suit." App. 153, Dkt. 109 at 1. Defendants took no position on Appellants' request for permissive intervention. *Id.*

The district court denied Appellants' motion to intervene. App. 192, Dkt. 140. With respect to intervention as of right, the court noted that Rule 24(a) generally requires only a "'minimal'" showing that the representation of its interests by the existing parties "'may be inadequate.'" App. 192-193, Dkt. 140 at 1-2 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10

---

[2] Appellants claim that Plaintiff States did not contest that Appellants have a concrete interest in the pending action. Opening Br. 15. That is incorrect: Plaintiff States asserted below that Appellants "have failed to demonstrate a cognizable interest that their exclusion from this litigation would impair them from protecting." App. 165, Dkt. 113 at 10.

(1972)). However, the court explained, under First Circuit precedent, this "'burden of persuasion is ratcheted upward'" where "the movant seeks to intervene as a defendant alongside a government entity." App. 193, Dkt. 140 at 2 (quoting *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021) and *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998)). The court therefore applied the "'rebuttable presumption that the government will defend adequately its action,'" which can be overcome by a "'strong affirmative showing'" that the government defendant "'is not fairly representing the applicants' interests.'" *Id.* (quoting *Victim Rts. L. Ctr.*, 188 F.3d at 561; *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 35 (1st Cir. 2000); *Patch*, 136 F.3d at 207). The district court concluded that, under the circumstances of this case, Appellants failed to meet their burden because their "interests in defending against Plaintiffs' suit align seamlessly with Defendants' interests" and "the United States 'intends to vigorously defend this suit.'" *Id.* (quoting Dkt. 109).

For similar reasons, the district court denied Appellants' request for permissive intervention. App. 193-194, Dkt. 140 at 2-3. The district court noted as well that Plaintiff States are seeking injunctive relief only "as to the Plaintiff States." App. 193, Dkt. 140 at 2. In response to Appellant's argument that "the limits [on relief] asserted by Plaintiff States are not plausible," the court stated that Appellants provided "no reason to find that arguments as to any spill-over effect of

the relief requested by the Plaintiff States will not be vigorously asserted by the [federal] government." App. 193-194, Dkt. 140 at 2-3.

The district court emphasized that its denial of Appellants' intervention would still allow Appellants to participate as amici. App. 194, Dkt. 140 at 3. The district court also noted that it had granted Appellants permissive intervention in the *League of Women Voters* case, *id.*—but that was a case where the plaintiffs had opposed permissive intervention only to the extent that Appellants were attempting to transfer the case, which the court had since denied, *see League of Women Voters of Mass. v. Trump*, 1:26-cv-11549-IT (D. Mass.), Dkt. 106. Because the district court had consolidated briefing on the pending motions between the two cases, Appellants could "cross-file their briefs as intervenors" in the *League of Women Voters* case as "briefs of amicus curiae in this action." App. 194, Dkt. 140 at 3.

While Appellants' appeal of the denial of intervention in this case was pending, *see* App. 195, Dkt. 141, Appellants filed their amicus brief in the district court, *see* App. 200, Dkt. 153. That brief raises many of the same arguments that Defendants have raised. Like Defendants, Appellants urge dismissal of Plaintiff States' claims and denial of Plaintiff States' motions for a preliminary injunction and summary judgment. *Compare* App. 225, Dkt. 153 at 20 (amicus brief), *with* App. 288, Dkt. 157 at 48 (Defendant's combined motion to dismiss and opposition to motion for summary judgment). The amicus brief also reiterates the same

arguments regarding standing, ripeness, and the President's purported authority to issue the Executive Order as those raised in Defendants' combined motion to dismiss and opposition to Plaintiff States' motion for summary judgment. *Compare* App. 200, Dkt. 153 (Appellants' amicus brief, arguing that Plaintiff States lack standing for lack of a concrete injury, that Plaintiff States' claims are premature because there is no final agency action, and that no statute restricts the President's authority to issue the Executive Order), *with* App. 230, Dkt. 157 (Defendants' motion and opposition, raising similar points). The one additional argument in Appellants' amicus brief is that any statute preventing the President from issuing orders to the Postal Service would be unconstitutional. App. 223-225, Dkt. 153 at 18-20. That argument is presented as a secondary, alternative argument to Appellants' contention that no such statute exists, which is similar to an argument Defendants raised in their motion. *Compare id.*, with App. 264-265, Dkt. 157 at 24-25 (Defendants' motion and opposition, asserting Plaintiff States have not identified "a statutory violation" resulting from the Executive Order's instructions to the Postal Service).

## SUMMARY OF ARGUMENT

The district court correctly denied Appellants' motion to intervene as of right. Plaintiff States seek to enjoin implementation of the Executive Order *only as applied to themselves*. An order in Plaintiff States' favor therefore would not

prevent Appellants from working with the federal government to obtain the benefits they claim they would receive under the Executive Order. As a result, Appellants do not have a concrete interest in this matter that is reasonably at risk. And even if they did, they cannot overcome the presumption that those interests will be adequately represented by Defendants, who are vigorously defending the case.

This Court should also affirm the district court's denial of Appellant's motion for permissive intervention. The district court's discretion as to permissive intervention is broad, with the court entitled to consider "almost any factor rationally relevant" in deciding whether to deny permissive intervention. *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020). The district court's denial of permissive intervention here was eminently reasonable, given the limited relief sought by Plaintiff States, Defendants' vigorous defense of the Executive Order, and Appellants' ability to raise their arguments as amici.

## STANDARD OF REVIEW

This Court reviews the denial of a motion to intervene for abuse of discretion. *Victim Rts. L. Ctr.*, 988 F.3d at 559. With respect to intervention as of right, the district court's discretion is "somewhat more circumscribed than in the context of intervention generally." *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011). Even so, this Court will reverse a district court's denial of intervention as of right only if

the court "fails to apply the general standard provided by the text of Rule 24(a)(2)" or "reaches a decision that so fails to comport with that standard as to indicate an abuse of discretion." *Int'l Paper Co. v. Inhabitants of Town of Jay*, 887 F.2d 338, 344 (1st Cir. 1989).

"The discretion afforded to the district court under Rule 24, substantial in any event, is even broader when the issue is one of permissive intervention." *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 11 (1st Cir. 2009). A district court's decision whether to grant permissive intervention is "highly discretionary," and the court "may consider almost any factor rationally relevant in making that determination." *Melone v. Coit*, 100 F.4th 21, 28 (1st Cir. 2024).

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY DENIED INTERVENTION AS OF RIGHT

The district court correctly held that Appellants are not entitled to intervene as of right. To prevail on a motion to intervene as of right, putative intervenors must demonstrate: "(1) the timeliness of [their] motion; (2) a concrete interest in the pending action; (3) a realistic threat that resolution of the pending action will hinder [their] ability to effectuate that interest, and (4) the absence of adequate representation by any existing party." *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020). A movant's "failure to satisfy any one of these four requirements sounds the death knell" for their motion. *Id.*

Here, to the extent Appellants claim a protectable interest, they cannot show that interest would be harmed, since the relief sought by Plaintiff States would not affect them. And Appellants have not demonstrated that they can overcome the presumption that Defendants will adequately represent their interests, under the particular circumstances of this case.

### A. The Relief Sought by Plaintiff States Will Not Impair Appellants' Interests

Appellants do not qualify for intervention as of right, because there is no realistic threat that the injunctive relief Plaintiff States seek—which is expressly limited to the Plaintiff States themselves—will impede Appellants' ability to effectuate a cognizable interest in this matter.

In the trial court, Appellants claimed that "[i]f Plaintiffs succeed in enjoining enforcement of the Executive Order, the federal government will be blocked from providing the State Citizenship List to States that want to receive it." App. 96, Dkt. 74 at 14. But that worry is not present at all. Plaintiff States are not seeking a nationwide injunction of the Executive Order; rather, they seek to enjoin implementation of the Executive Order only "as applied to Plaintiff States themselves." App. 156, Dkt. 113 at 1 (opposition to motion to intervene); *see also* Dkt. 97-1 at 2 (proposed order granting motion for summary judgment, seeking permanent injunctions of challenged provisions of Executive Order only with respect to Plaintiff States); App. 146, Dkt. 106 at 30 (memorandum of points and

authorities in support of motion for summary judgment, asking district court to "permanently enjoin implementation or enforcement of the [Executive Order's] challenged provisions as to Plaintiff States"). Such an injunction would not require or prohibit *anything* in Appellants' States. And Plaintiffs are not seeking an injunction that would prevent Appellants from requesting or receiving their States' Citizenship Lists from the federal government. In short, this lawsuit does not threaten Appellants' ability to cooperate with, and derive any benefit they see from, Section 2 of the Executive Order.

Nor would Plaintiff States' success harm Appellants with respect to Section 3. Appellants argue that "this action would block proposed postal reforms that would help the Intervener States secure their elections and ensure that all legal mail votes are counted." App. 96, Dkt. 74 at 14. But again, the injunction sought as to the Executive Order's Postal Service-related provisions would only prevent the Postal Service from completing rulemaking to promulgate the regulations outlined in the Executive Order as to elections administered by Plaintiff States. Dkt. 97-1 at 3 (proposed order granting motion for summary judgment, seeking permanent injunction barring enforcement of Section 3 of the Executive Order only against Plaintiff States). In addition, the injunction would not bar the federal government from "providing non-binding USPS guidance on ballot mail envelopes." *Id*. at 3. Accordingly, Appellants would remain free to voluntarily follow any such

guidance as they administer mail voting in their own elections, including designing their mail ballot envelopes to allow for additional tracking and verification.

Appellants assert that the injunctive relief sought cannot, as a practical matter, be tailored to the Plaintiff States. Opening Br. 18. Although Appellants make this argument on appeal, they failed to raise any arguments about the district court's alleged inability to tailor injunctive relief to the Plaintiff States below. *See* App. 176, Dkt. 127 (Appellants' reply in support of motion for intervention, which does not argue that injunctive relief cannot be limited to Plaintiff States) and App. 200, Dkt. 153 (Appellants' amicus brief, same). In any event, the proposed order submitted by Plaintiff States in support of their motion for summary judgment provides a detailed description of how the district court could feasibly do so, including by allowing States to request the federal government's assistance in verifying their voters' citizenship or eligibility and to follow any non-binding ballot mail envelope guidance the Postal Service may issue. Dkt. 97-1 at 3-4. Moreover, as the district court correctly noted, Defendants are well-positioned to make arguments about "any spill-over effect of the relief requested by the Plaintiff States," App. 194, Dkt. 140 at 3, and they can therefore adequately represent Appellants' interests with respect to these arguments. The district court's determination therefore was reasonable, based on the facts and arguments before it, and Appellants have not shown that it constituted an abuse of discretion.

Finally, there is no merit to Appellants' claim of a right to intervene based on the potential for the district court to grant Plaintiff States' prayer for a declaratory judgment. Opening Br. 17-18. Plaintiff States have asked the district court to "dispose[] of Plaintiff States' claims" against Defendants by declaring the Executive Order unlawful. Dkt. 97-1 at 2 (proposed order granting motion for summary judgment). Such a declaration certainly would not bind Appellants, who are not parties in the lawsuit. And it would leave the Defendants free to seek and receive a contrary determination in suits brought by others, because of limits on applying offensive non-mutual collateral estoppel against the federal government. *See United States v. Mendoza*, 464 U.S. 154, 158 (1984).

Indeed, as the Supreme Court recently reiterated, "'neither declaratory nor injunctive relief,' we have said, 'can directly interfere with enforcement of contested statutes or ordinances *except with respect to the particular federal plaintiffs*.'" *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025) (emphasis added). Appellants' cited cases—*Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985), and *In re Financial Oversight and Management Board for Puerto Rico*, 919 F.3d 638 (1st Cir. 2019)— predate the Supreme Court's decision in *CASA* and do not reflect that case's recognition that relief via declaratory or injunctive relief can be limited to particular plaintiffs or a plaintiff class. And, as noted above, that is expressly the case here.

Appellants' contrary view would stretch intervention as of right beyond the breaking point. Federal officials and agencies have historically faced countless challenges to federal statutes and regulations around the country, which routinely seek as part of their relief a declaration that a given rule violates a congressional command or that a given statute violated the Constitution. In Appellants' view, any person anywhere in the Nation who seeks to benefit from the rule or statute at issue would be entitled to intervene in the rule's defense. Such an interpretation would render Rule 24(a)'s requirement to show a concrete interest that is reasonably threatened by the litigation effectively meaningless and could complicate district court proceedings immeasurably.

### B. Appellants' Interests are Adequately Represented by Defendants

The district court was also correct to determine that Defendants are adequately representing Appellants' interests.

This Court recognizes that "an applicant for intervention need only make a minimal showing that the representation afforded by existing parties likely will prove inadequate." *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). But the adequacy of interest requirement "has additional bite when a would-be intervenor's objective aligns seamlessly with that of an existing party." *T-Mobile*, 969 F.3d at 39. And the burden of persuasion is further "ratcheted

upward" when an applicant "seeks to intervene as a defendant alongside a government entity." *Victim Rts. L. Ctr.*, 988 F.3d at 561. In such cases, this Court applies "a rebuttable presumption that the government will defend adequately its action." *Id.*; see *also Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) (applying presumption where the government was "zealously interested in upholding the validity" of the challenged statute). An applicant seeking to intervene alongside an existing governmental defendant can overcome this presumption only by making a "strong affirmative showing" that the government defendant "is not fairly representing [its] interests." *Victim Rts. L. Ctr.*, 988 F.3d at 561.

In this particular case, as the district court observed, the federal government is "vigorously defend[ing]" all challenged provisions of the Executive Order, and the interests of Appellants and Defendants "align seamlessly." App. 193, Dkt. 140 at 2. That is because Defendants and Appellants both wish to see all challenged provisions of the Executive Order upheld, and Defendants have zealously pursued this outcome by seeking to dismiss all of Plaintiff States' claims. Thus, the district court did not abuse its discretion in applying the presumption of adequate representation.

Appellants contend that the presumption of adequate representation can never arise "when one sovereign attempts to intervene to defend another sovereign."

Opening Br. 24. But Appellants do not identify any cases—from this Court or any other—that stand for this categorical proposition. Appellants' cases instead hold only that presumptions about the adequacy of a governmental defendant's representation do not apply where the government is sued in its capacity as an employer. *See United States v. City of Los Angeles*, 288 F.3d 391, 401-402 (9th Cir. 2002) (presumption has not been applied "when the government acts as an employer" and the parties "are antagonists in the collective bargaining process"); *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (presumption does not apply where a city appears "in its capacity as an employer," not "as a sovereign"). These cases have no relevance here, because Defendants are not defending the Executive Order in their capacity as employers, but rather solely in their sovereign capacities.

And contrary to Appellants' contention, in *Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003), the D.C. Circuit did not announce a bright-line rule that "one sovereign does not adequately represent the interests of another sovereign." Opening Br. 26. Rather, under the particular facts of that case—which involved the application of the Endangered Species Act to animals located in Mongolia—the court determined that the United States government could not adequately represent the interests of the nation of Mongolia, because it was "not hard to imagine" how their interests "might diverge during the course of

litigation." *Fund for Animals, Inc.*, 322 F.3d at 736 (explaining the United States government would likely disagree with the Mongolian government's assessment of its conservation programs as part of its defense). Not so here, where Appellants' interests in defending all challenged aspects of the Executive Order are in lockstep with Defendants' litigation objective. To be sure, there may be cases where the federal government cannot adequately represent the interests of a State, for any number of reasons—but this is not such a case.

The district court also acted within its discretion in determining that Appellants failed to meet their burden of overcoming the presumption of adequate representation in this particular case. App. 193, Dkt. 140 at 2. Appellants argue that Defendants' representation is inadequate because the federal government "represents the *entire country*," while Appellants "represent *only* their citizens." Opening Br. 20. But the Court need not find "perfect identity of motivational interests" between Defendants and Appellants to find adequate representation. *Victim Rts. L. Ctr.*, 988 F.3d at 562. The "general notion" that a government defendant "represents broader interests at some abstract level is not enough," without more, to establish inadequacy of representation. *Daggett v. Comm'n on Gov't Ethics and Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999).

Contrary to Appellants' contention (Opening Br. 20-21), the Supreme Court's decision in *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), is

readily distinguishable on this point. In *Trbovich*, a union member sought to intervene in a case where the Secretary of Labor challenged the results of a union election. *Id*. at 529. The problem was that the Secretary was required by statute to "serve two distinct interests:" to effectively serve as the "union members' lawyer" for purposes of enforcing their rights against the union, and to protect the "vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member." *Id.* at 538-539. The Supreme Court explained that these dual functions "may not always dictate precisely the same approach to the conduct of the litigation." *Id.* at 539. Because of those competing interests, the union member was entitled to intervene as of right. *Id*. As this Court has clarified, *Trbovich*'s reasoning does not apply in cases where "there is no statutorily imposed conflict" and the government defendant's interests are "closely aligned" with those of the would-be intervenor. *State v. Director, U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001).

Appellants also contend that they are entitled to intervene because they are "unlikely to take the same approach to the conduct of the litigation" as Defendants. Opening Br. 21. But a "difference in litigation tactics" does not, by itself, support a finding of inadequate representation. *SEC v. LBRY, Inc*., 26 F.4th 96, 100 (1st Cir. 2022). Indeed, "'[i]f disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no

meaning.'" *Id*. Nor can Appellants rely solely on their "desire to present an additional argument or a variation on an argument" to show that Defendants will not adequately represent their interests. *Id.* at 99-100; *see also Victim Rts. L. Ctr.*, 988 F.3d at 562 (collecting cases denying intervention where would-be intervenor wished to press arguments that had not been raised by existing parties).

In any event, Appellants have not shown any substantial difference between their positions and those taken by Defendants in this case. There is exactly one argument Appellants have raised that Defendants have not: that a statute restricting the President from directing the Postal Service would be unconstitutional. App. 223-225, Dkt. 153 at 18-20. But even this argument is presented only as a backstop to Appellants' primary argument that no such statute exists, which Defendants have also asserted. *See supra* p. 13. Moreover, district courts do not abuse their discretion in denying intervention as of right where a would-be intervenor's additional argument is "easily presented in amicus briefs." *Mass. Food Ass'n*, 197 F.3d at 567; *see also Victim Rts. L. Ctr.*, 988 F.3d at 564 (noting amicus participation can provide "sufficient opportunity" for would-be intervenors to "present their view"). The district court's order allowed Appellants to do so here. App. 194, Dkt. 140 at 3.

Finally, Appellants cannot establish inadequate representation by invoking the truism that sometimes States and the federal government may disagree about how

best to administer elections. When this Court considers whether a party satisfies Rule 24(a)'s requirements, it does so "in keeping with a commonsense view of the overall litigation." *Patch*, 136 F.3d at 204. This case concerns particular issues as to which Defendants and Appellants agree wholeheartedly. The adequacy of representation here is not overcome by theoretical disagreements that could happen in other settings.

## II. THE DISTRICT COURT PROPERLY DENIED PERMISSIVE INTERVENTION

A district court has "very broad discretion" in deciding a motion for permissive intervention. *T-Mobile*, 969 F.3d at 40-41. Because district courts have greater discretion to deny permissive intervention than intervention as of right, a "conclusion that the court acted within its discretion in denying intervention as of right effectively disposes of the permissive intervention question as well." *Caterino v. Barry*, 922 F.2d 37, 40 (1st Cir. 1990); *see also T-Mobile*, 969 F.3d at 40 (district courts "may consider almost any factor rationally relevant" when deciding permissive intervention motions). Here, the district court acted well within its discretion in denying Appellants' motion to intervene under Rule 24(b).

Appellants assert that the district court abused its discretion by relying on Defendants' ability to adequately represent Appellants' interests as a basis to deny permissive intervention. But this Court has repeatedly held otherwise. *See*, *e.g.*, *T-Mobile*, 969 F.3d at 41 ("[A] district court considering requests for permissive

intervention should ordinarily give weight to whether the original parties to the action adequately represent the interests of the putative intervenors."); *Mass. Food Ass'n*, 197 F.3d at 568 (finding no abuse of discretion where district court denied permissive intervention based on adequate representation by existing party).

Appellants' remaining argument as to permissive intervention—that the district court abused its discretion by denying permissive intervention in this case while granting it in the *League of Women Voters* case—also fails. Two distinctions between *League of Women Voters* and this case explain why the district court granted permissive intervention in the former but not the latter. First, the *League of Women Voters* plaintiffs did not oppose Appellant's permissive intervention (provided that the case was not transferred to the District of Columbia), while Plaintiff States did oppose Appellant's permissive intervention. Where existing parties do not object to intervention, that can obviously be a factor tipping the court to permit it. Second, the *League of Women Voters* plaintiffs seek an injunction of the Postal Service's implementation of the Executive Order that includes Appellants within its scope. *See supra* p. 7-8. In contrast, Plaintiff States only seek an injunction barring enforcement of the Executive Order against themselves. *See supra* p. 7. Because district courts are empowered to consider "almost any factor rationally relevant" in deciding whether to grant permissive

intervention, *T-Mobile*, 969 F.3d at 40, the district court's reliance on these considerations comes nowhere close to constituting an abuse of discretion.

Finally, by inviting Appellants to appear as amici and allowing them to file their briefs as intervenors in the *League of Women Voters* case as their amicus brief, the district court ensured that Appellants' arguments would still be heard and considered even without party status. This Court has repeatedly upheld district courts' denial of permissive intervention where "the amicus procedure provides sufficient opportunity" for would-be intervenors "to present their view." *Victim Rts. L. Ctr.*, 988 F.3d at 564; *see also Mass. Food Ass'n*, 197 F.3d at 568 (affirming denial of permissive intervention where "any variations of legal argument could adequately be presented in amicus briefs"). Denying permissive intervention, while ensuring that Appellants could have their arguments considered, was within the district court's discretion.

## CONCLUSION

The order denying intervention should be affirmed.

Dated: June 1, 2026

Respectfully Submitted,

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

M. PATRICK MOORE, JR.
*First Assistant Attorney General*
DAVID C. KRAVITZ
*State Solicitor*
VANESSA A. ARSLANIAN
*State Trial Counsel*
JARED B. COHEN
JAK KUNDL
*Assistant Attorneys General*
One Ashburton Place
Boston, MA 02108
(617) 963-2107
Vanessa.Arslanian@mass.gov

*Counsel for the Commonwealth of Massachusetts*

ROB BONTA
*Attorney General of California*

By: */s/ Jane Reilley*
SAMUEL T. HARBOURT
*Solicitor General*
JOSHUA A. KLEIN
*Supervising Deputy Solicitor General*
JANE REILLEY
IAN FEIN
*Deputy Solicitors General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
SETH E. GOLDSTEIN
*Supervising Deputy Attorney General*
ANNE P. BELLOWS
KEVIN L. QUADE
LISA C. EHRLICH
MALCOLM A. BRUDIGAM
MICHAEL S. COHEN
ROBERT WILLIAM SETRAKIAN
*Deputy Attorneys General*
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3879
Jane.Reilley@doj.ca.gov

*Counsel for the State of California*

AARON D. FORD
*Attorney General of Nevada*
HEIDI PARRY STERN
*Solicitor General*
K. BRUNETTI IRELAND
*Chief of Special Litigation*
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119
(702) 486-9246
hstern@ag.nv.gov

*Counsel for the State of Nevada*

NICHOLAS W. BROWN
*Attorney General of Washington*
TERA M. HEINTZ
CRISTINA SEPE
KARL D. SMITH
*Deputy Solicitors General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Tera.Heintz@atg.wa.gov

*Counsel for the State of Washington*

KRISTIN K. MAYES
*Attorney General of Arizona*
KARA KARLSON
KAREN J. HARTMAN-TELLEZ
JOSHUA M. WHITAKER
SYREETA TYRELL
*Assistant Attorneys General*
2005 North Central Avenue
Phoenix, AZ 85004
(602) 542-8118
Kara.Karlson@azag.gov

*Counsel for the State of Arizona*

PHILIP J. WEISER
*Attorney General of Colorado*
SHANNON STEVENSON
*Solicitor General*
PETER BAUMANN
*Senior Assistant Attorney General*
1300 Broadway
Denver, CO 80203
(720) 508-6400
Shannon.Stevenson@coag.gov

*Counsel for the State of Colorado*

WILLIAM TONG
*Attorney General of Connecticut*
MAURA MURPHY
*Deputy Associate Attorney General*
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
(860) 808-5020
Maura.Murphy@ct.gov

*Counsel for the State of Connecticut*

KATHLEEN JENNINGS
*Attorney General of Delaware*
IAN R. LISTON
*Director of Impact Litigation*
VANESSA L. KASSAB
*Deputy Attorneys General*
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
Ian.Liston@delaware.gov

*Counsel for the State of Delaware*

BRIAN L. SCHWALB
*Attorney General of the District of Columbia*
CAROLINE S. VAN ZILE
*Solicitor General*
400 6th Street, NW
Washington, DC 20001
(202) 724-6609
caroline.vanzile@dc.gov

*Counsel for the District of Columbia*

KWAME RAOUL
*Attorney General of Illinois*
JANE ELINOR NOTZ
*Solicitor General*
ALEX HEMMER
*Deputy Solicitor General*
115 S. LaSalle Street
Chicago, IL 60603
(312) 814-5526
Alex.Hemmer@ilag.gov

*Counsel for the State of Illinois*

AARON M. FREY
*Attorney General of Maine*
KATHERINE W. THOMPSON
*Special Counsel*
6 State House Station
Augusta, ME 04333
(207) 626-8800
Kate.Thompson@maine.gov

*Counsel for the State of Maine*

ANTHONY G. BROWN
*Attorney General of Maryland*
VIRGINIA A. WILLIAMSON
*Assistant Attorney General*
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6584
vwilliamson@oag.state.md.us

*Counsel for the State of Maryland*

DANA NESSEL
*Attorney General of Michigan*
NEIL GIOVANATTI
ERIK GRILL
*Assistant Attorneys General*
P.O. Box 30736
Lansing, MI 48909
(517) 335-7659
grille@michigan.gov

*Counsel for the State of Michigan*

KEITH ELLISON
*Attorney General of Minnesota*
ANGELA BEHRENS
ALLEN COOK BARR
*Assistant Attorneys General*
LINDSEY E. MIDDLECAMP
*Special Counsel*
445 Minnesota Street, Suite 600
St. Paul, MN 55101
(651) 300-0711
Angela.Behrens@ag.state.mn.us

*Counsel for the State of Minnesota*

JENNIFER DAVENPORT
*Attorney General of New Jersey*
MEGHAN K. MUSSO
JONATHAN MANGEL
JOSHUA P. BOHN
*Deputy Attorneys General*
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5276
Meghan.Musso@law.njoag.gov

*Counsel for the State of New Jersey*

RAÚL TORREZ
*Attorney General of New Mexico*
BAILEY COLFAX
*Assistant Attorney General*
408 Galisteo Street
Santa Fe, NM 87501
(505) 490-4060
bcolfax@nmdoj.gov

*Counsel for the State of New Mexico*

LETITIA JAMES
*Attorney General of New York*
BARBARA D. UNDERWOOD
*Solicitor General*
JUDITH N. VALE
*Deputy Solicitor General*
RABIA MUQADDAM
*Chief Counsel, Federal Initiatives*
28 Liberty Street
New York, NY 10005
(212) 416-6046
Judith.Vale@ag.ny.gov

*Counsel for the State of New York*

JEFF JACKSON
*Attorney General of North Carolina*
LAURA HOWARD
*Chief Deputy Attorney General*
DANIEL P. MOSTELLER
*Associate Deputy Attorney General*
114 W. Edenton Street
Raleigh, NC 27603
(919) 716-6026
dmosteller@ncdoj.gov

*Counsel for the State of North Carolina*

DAN RAYFIELD
*Attorney General of Oregon*
ROBERT A. KOCH
*Senior Assistant Attorney General*
1162 Court Street NE
Salem, OR 97301
(503) 378-4402
Robert.A.Koch@doj.oregon.gov

*Counsel for the State of Oregon*

PETER F. NERONHA
*Attorney General of Rhode Island*
JAMES J. ARGUIN
*Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400
jarguin@riag.ri.gov

*Counsel for the State of Rhode Island*

CHARITY R. CLARK
*Attorney General of Vermont*
RYAN P. KANE
*Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153
Ryan.Kane@vermont.gov

*Counsel for the State of Vermont*

JOSHUA L. KAUL
*Attorney General of Wisconsin*
LYNN LODAHL
*Assistant Attorney General*
17 West Main Street
Madison, WI 53707
(608) 264-6219
Lynn.Lodahl@wisdoj.gov

*Counsel for the State of Wisconsin*

JAY JONES
*Attorney General of Virginia*
TILLMAN J. BRECKENRIDGE
*Solicitor General*
202 North Ninth Street
Richmond, VA 23219
(804) 786-7704
tbreckenridge@oag.state.va.us

*Counsel for the Commonwealth of Virginia*

JOSH SHAPIRO
*Governor of the Commonwealth of Pennsylvania*
MICHAEL J. FISCHER
*Executive Deputy General Counsel*
JACOB B. BOYER
*Deputy General Counsel*
30 North Third Street, Suite 200
Harrisburg, PA 17101
(717) 831-2847
mjfischer@pa.gov

*Counsel for the Governor of the Commonwealth of Pennsylvania*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,433 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Jane Reilley*
Jane Reilley

## CERTIFICATE OF SERVICE

On June 1, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Jane Reilley*
Jane Reilley